IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| James Cooper, )<br>    Petitioner, )<br> )<br>v. )<br> )<br>Justin Andrews, )<br>    Respondent. ) | 1:21cv393 (RDA/IDD) |

## MEMORANDUM OPINION

Federal inmate James Cooper ("Petitioner") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, arguing that the Bureau of Prisons ("BOP") failed to award him First Step Act (FSA)[1] "Earned Time" credits for his participation in a "Life Connections Program," to which he asserts entitlement pursuant to 18 U.S.C. § 3632(d)(4)(A). Petitioner also alleges he was not given credit for time he spent in a local jail, and seeks compassionate release due to COVID-19. Respondent filed a motion to dismiss the claim for compassionate release and a motion for summary judgment on Petitioner's other claims [Dkt. Nos. 13, 14], with a brief in support, and provided Petitioner with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 13-1, 14-1]. Petitioner has not responded to the motion to dismiss or the motion for summary judgment. The matter is therefore ripe for adjudication. For the reasons stated below, respondent's motion to dismiss will be granted, and the underlying petition dismissed.

### I. Background

Petitioner pleaded guilty to Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and was sentenced on August 1, 2013 to 132 months in prison in the

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

United States District Court for the Middle District of North Carolina. United States v. James Cooper, Case No. 1:12cr343 (KJM-1) (M.D. NC. Aug. 1, 2013) ("Cooper I"), Dkt. Nos. 34, 42. Petitioner filed a motion to reduce his sentence, Cooper I, Dkt. Nos. 55, 57, and on February 2, 2016, the sentencing court reduced his sentence from 132 months in prison to 111 months, which he is presently serving. Id. at Dkt. No. 63.[2]

The FSA addresses reentry of the incarcerated, and directs the BOP to take specific actions regarding programming, good-time credit, and compassionate release, among other issues. As relevant here, Congress directed the Attorney General to develop a risk and needs assessment system no later than 210 days after the enactment of the FSA, i.e., July 19, 2019. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment System on July 19, 2019. The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h).

Petitioner maintains he should have started to receive time credits beginning January 15, 2020 and that there is no phase in period as the BOP maintains.[3] Respondent argues that Petitioner's claim is not ripe for judicial review because the FSA provides the BOP does not "require actual implementation for each inmate until January 2022" James v. Johns, No. 5:19cv117, 2020 U.S. Dist. LEXIS 155231, *6 (S.D. Ga. Aug. 4, 2020) (citations omitted), and that therefore Petitioner's request is premature. Respondent also moves to dismiss the petition because Petitioner has not exhausted his administrative remedies and does not have a

---

[2] Venue is proper because Petitioner was confined at FCI-Petersburg at the time he filed his § 2241 habeas petition even though he is now currently housed at the Federal Correctional Institution in Beckley, West Virginia ("FCI-Beckley"), with a Good Conduct Time ("GCT") release date of June 21, 2022. See Bureau of Prisons Inmate Locator, James Chadrick Cooper, No. 28793-057, http://www.bop.gov/inmateloc/ (last viewed Oct. 4, 2021).

[3] See Cohen v. United States, No, 20cv10833 (JGK), 2021 U.S. Dist. LEXIS 75852, *7 (S.D. N.Y. Apr. 21, 2021) (there is no basis for the Court to conclude that the failure of the BOP to provide ETCs during the phase-in period is a violation of the First Step Act" and "[t]he overwhelming majority of courts to have considered this issue have agreed with the Government's view") (collecting cases).

2

constitutional or statutory right to have "time credits" applied toward early release; his jail credits were properly calculated; and he filed his request for compassionate release in the wrong venue.

## II. Respondent's Statement of Undisputed Material Facts

The facts related to the motion to dismiss and the summary judgment are uncontested, and based upon the facts established in the prior state and federal criminal proceedings, as well as the records of the BOP.[4]

*A. Petitioner's State and Federal Criminal Proceedings*

1. On August 30, 2012, Petitioner was arrested by state authorities in Richmond County, North Carolina, for Sell/Deliver Cocaine, Case Nos. 12CR52400, and Felony Trafficking Cocaine, Case Nos. 12CR52401, 12CR52402, 12CR52403, 12CR52404, and 12CR52405. The Richmond County charges were dismissed on November 11, 2012, but Petitioner remained in the custody of the State of North Carolina after the dismissal of the Richmond County charges because he had pending criminal charges in Montgomery County, North Carolina. [Dkt. No. 15-1 at ¶ 3].

2. On November 5, 2012, Petitioner was transferred to Montgomery County, North Carolina to face pending charges in Case Nos. 11CRS50528 (Felony Possession with Intent to Manufacture/Deliver a Schedule VI Controlled Substance), 11CRS50562 (Fail to report Change of Address-Sex Offender), and 12CR51272 (Driving While Impaired). [Id. at ¶ 4].

---

[4] The original petition and the amended petition are each sworn, but each pleading is mostly argument or conclusory assertions. While Petitioner's amended petition asserts he should have been "awarded" the time he was in custody from August 30, 2013 [Dkt. No. 4-1] instead of September 21, 2014, which is the date he was paroled from state custody to his federal detainer according to the undisputed records submitted by respondent [Dkt. No. 15-1 at 4-5], this "averment" is in the nature of argument. Petitioner's argument is premised on his assertion that the sentencing court ran his state and federal time concurrent. [Dkt. No. 4-1]. The sentencing court, however, expressly ran his federal sentence consecutive to the state sentence he was "presently serving." Cooper I, Dkt. No. 42 at 2. The subsequent reduction of sentence from 132 months in prison to 111 months did not alter any other provision of the original sentencing order. Cooper I, Dkt. No. 63. The sentencing court's records conclusively establish that the federal time was run consecutive to the state time that had been imposed prior to his federal sentencing.

3

3. On November 27, 2012, the Montgomery County District Court sentenced Petitioner to a 14-month term of imprisonment for Driving While Impaired, Case No. 12CR51272. The Montgomery County District Court applied no jail credit. [Id. at ¶ 5].

4. The Montgomery County Superior Court consolidated Petitioner's Case No. 11CRS50528 (Felony Possession with Intent to Manufacture/Sell/Deliver a Schedule VI Controlled Substance) with his Probation Revocation, Case No. 11CRS50562 (Fail to report Change of Address-Sex Offender). On December 19, 2012, Petitioner's probation was revoked, and he was sentenced to a 26-month term of imprisonment with 71-days of jail credit for these two cases (Case Nos. 11CRS50562 & 11CRS50528). [Id. at ¶ 6].

5. On January 4, 2013, Petitioner was taken into temporary custody by the United States Marshals Service ("USMS"), on a writ of habeas corpus ad prosequendum in connection with federal criminal proceedings pending in the United States District Court for the Middle District of North Carolina. [Id. at ¶ 7].

6. After the federal criminal proceedings concluded, Petitioner was returned to the custody of the State of North Carolina on March 13, 2013, to continue service of his state sentence. [Id. at ¶ 8].

7. On August 1, 2013, the United States District Court for the Middle District of North Carolina sentenced Petitioner to a 132-month term of imprisonment for his distribution of cocaine base in Case No. 1:12cv343. The sentencing court ordered Petitioner's sentence to run consecutive to the North Carolina state sentences he was then currently serving. [Id. at ¶ 9].

8. On September 21, 2014, Petitioner was paroled into exclusive federal custody, which was also the date that his federal sentence formally commenced. [Id. at ¶ 10].

9. On February 16, 2016, the United States District Court for the Middle District of North Carolina reduced Petitioner's sentence form a 132-month term of imprisonment to a 111-month term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). [Id. at 11].

*B. The BOP's Sentencing Calculation*

10. After the sentence reduction, the BOP updated Petitioner's sentence calculation to reflect a total term of 111 months, as opposed to 132 months. [Id. at ¶ 11].

11. The recalculation did not change Petitioner's federal sentence start date, September 21, 2014, which is the date that he was paroled into exclusive federal custody. [Id. at ¶ 12].

12. The BOP awarded Petitioner prior custody credit from August 30, 2012 (the date of his arrest by North Carolina authorities) through November 26, 2012 (the day before he was sentenced by the Montgomery County District Court to 14-months for Driving While Impaired). [Id. at ¶ 12].

*C. Petitioner Did Not Use his Administrative Remedies*

14. Petitioner has filed five administrative remedies while in BOP custody. Only two of the five have any possible relevance to the present § 2241 habeas petition. One of Petitioner's five administrative claims references "jail credit" and a second claim references "being punished for COVID-19." None of the three remaining claims references either jail time/credits or COVID-19. [Id. at ¶ 13].

15. The administrative claim concerning "jail credit" was rejected because it was filed at the regional level, without an initial request to the institution. Petitioner did not pursue an appeal of that rejection and he did not refile that claim at the appropriate level. [Id. at ¶ 13].

16. Petitioner's claim that he was "being punished for COVID-19" was rejected because he failed to submit a copy of an applicable incident report. [Id. at ¶ 13].

*D. The BOP's Response to the COVID-19 Pandemic*

17. Since January 2020, the BOP has coordinated a ride-range of subject matter experts to prevent the spread of COVID-19 at its institutions. BOP, COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last viewed Oct. 1, 2021).

18. The BOP's action plan is consistent with the guidance of the Centers for Disease Control and Prevention ("CDC") and World Health Organization. Id. In addition, BOP's plan evolves as the information concerning the pandemic changes, and provides for response to the risks posed by COVID-19. The plan includes, but is not limited to screening, testing, quarantine, and isolation protocols, modified institutional operations, sanitation, personal protective equipment, and population reduction. Id.

19. With the arrival of COVID-19 vaccines, the BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to facilitate the vaccinations of BOP staff and inmates. Id. Through August 30, 2021, 211,139 doses of COVID-19 vaccinations have been administered to BOP staff and inmates. Id.[5]

20. The BOP's vaccination efforts for those staff and inmates is ongoing and it continues to implement changes to their policies as new information about the COVID-19 virus is learned at both a national- and institutional-level. Id.

### III. Standard of Review

Petitioner's claims involve both the standard for a motion to dismiss based upon improper venue and summary judgment. Federal Rule of Civil Procedure 12(b)(3) permits dismissal of a claim where the Court is an improper venue for their resolution. In determining the propriety of venue, the Court is not bound by the allegations in the pleading and may consider evidence outside the pleadings. Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006). The burden of proving proper venue lies with Petitioner. Id.; Symbology Innovations, LLC v. Lego Sys., Inc., 158 F. Supp. 3d 916, 925 (E.D. Va. 2017).

---

[5] As of October 1, 2021, 226,876 doses of COVID-19 vaccinations have been administered to BOP staff and inmates. https://www.bop.gov/coronavirus/index.jsp (last viewed Oct. 4, 2021).

6

Further, it is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. See id. at 324; Anderson, 477 U.S. at 248. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## IV. Compassionate Release

In response to the current pandemic and its effect on federal prisons, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which set up a framework for consideration of release by what is referred to as "compassionate release." See 18 U.S.C. § 3582(c)(1)(A). Petitioner seeks compassionate release [Dkt. No. 1], but under the First Step Act, it is the sentencing court who may "impose a reduced sentence," not simply any district

court encountering a motion for compassionate release. United States v. McDonald, 986 F.3d 402, 408-09 (4th Cir. 2021) ("Under § 404(b) of the First Step Act, sentencing courts may impose a reduced sentence as if section[s] 2 and 3 of the Fair Sentencing Act of 2010 ... were in effect at the time the covered offense was committed."); see Braswell v. Gallegos, 82 F. Appx 633, 635 (10th Cir. 2003) ("Because a motion filed under § 3582 requests modification of a sentence, it follows that such a motion must be filed in the district court which imposed the sentence."); see e.g., Ordonez v. Cole, 2020 U.S. Dist. LEXIS 170529, *15-16, __ F. Supp. 3d __ (W.D. Tex. 2020) ("As this Court did not sentence Petitioner, it cannot grant him the relief he seeks under § 3582(c)(1)(A) via § 2241.... [because] "compassionate release request is not a matter of illegal or unconstitutional restraint" [and therefore] a petition under §2241 is not the proper means by which Petitioner may obtain the relief he seeks.") (citing Figueroa v. Chapman, 347 F. App'x 48, 50 (5th Cir. 2009)); Alexis v. Ortiz, Civ. No. 19-1085, 2019 U.S. Dist. LEXIS 94124, *5 (D.N.J. June 5, 2019) (district court lacks jurisdiction under § 2241 to modify a sentence based on compassionate release under 18 U.S.C. § 3582(c)(1)(A)). Accordingly, the claim for compassionate release will be dismissed without prejudice.

**V. Exhaustion**

*A. Jail Credits*

Petitioner asserts that the FOB did not credit him with all of the jail credit to which he is entitled on his federal sentence. In his initial filing, Petitioner alleged he was entitled to jail credit from when he was arrested on August 30, 2012 through December 18, 2012 when he began serving his state sentence. [Dkt. No. 1 at 2]. In his amended petition, Petitioner alleges he is entitled to jail credit from August 30, 2012 through August 1, 2013, the day the federal district court imposed the original sentence of 132 months in prison. [Dkt. No. 4 at 8]. Respondent states and Petitioner does not dispute that Petitioner was credited with the time served from August 30,

2012 through November 26, 2012. [Dkt. No. 15-1 at 5, 28]. Petitioner was sentenced on November 27, 2012 in state court and finished serving his state sentence on September 21, 2014 and was paroled to federal custody. [Id. at 4, 5].

Petitioner filed an administrative claim regarding jail credit that was rejected because he had filed it at the regional level instead of starting at the institutional level, which render it improperly filed. [Id. at 13]. Petitioner has not disputed the Respondent's assertion that his sentence start date for his federal term of imprisonment was September 21, 2014, or that he did not properly exhaust his claim.[6] While habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," it is an "avenue of last resort." Timms v. Johns, 627 F.3d 525, 531 (4th Cir. 2010) (citing Martin-Trigona v. Shiff, 702 F.2d 380, 388 (2d Cir. 1983)). Although § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under §°2241. See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490-91 (1973) (requiring exhaustion in § 2241 petitions); McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.") (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir. 1981)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (same). "Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung, 90 F. App'x at 445 (citing Carmona, 243 F.3d at 634-35). The exhaustion requirement allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being ha[u]led into court." Jones v. Bock, 549 U.S. 199, 204 (2007). Further, exhaustion will "improve the quality of suits that are filed by producing a useful administrative record." McCarthy v.

---

[6] To the contrary, Petitioner admits he did not file an appeal after his administrative claim was rejected. [Dkt. No. 4 at 3].

9

Madigan, 503 U.S. 140, 145 (1992) ("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.").

This Court has noted that "in rare cases, § 2241 habeas petitioners have been excused from the exhaustion requirement if they can show that proceeding through the administrative remedy process undoubtedly would be an exercise in futility that would serve no useful purpose." Hairston v. Wilson, 1:13cv126 (TSE/IDD), 2013 U.S. Dist. LEXIS 99493, *5-6 (E.D. Va. Feb. 5, 2013), aff'd, 532 F. App'x. 359 (4th Cir. Va. 2013). Hairston observed three instances in which exhaustion was excused: (1) where the government concedes exhaustion is futile; (2) the agency has predetermined the issue; and (3) "the attempt to exhaust such remedies would itself be a patently futile course of action." Id. (citing Elwood v. Jeter, 386 F.3d 842, 844 n.1 (8th Cir. 2004) and Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004); and quoting Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994)). None of the exceptions to exhaustion apply in this case, and the claim for jail credit must be dismissed.

*B. FSA*

Petitioner has not disputed the Respondent's affidavit and the attached exhibits that establish he has failed to exhaust his allegation that he is entitled to any credit under the FSA. His failure to exhaust requires dismissal of his claim without prejudice. See Darby v. Bolster, 2019 U.S. Dist. LEXIS 221416, *1, (E.D. Va. Dec. 19, 2019) (dismissing § 2241 petition seeking additional good conduct time pursuant to the FSA for failure to exhaust administrative remedies); Klutts v. Bolster, 2019 U.S. Dist. LEXIS 213019, *3 (E.D. Va. Dec. 10, 2019) (same). Indeed, the Fourth Circuit has recently declined to address a claim for good time credits under the FSA for failure to exhaust. See United States v. Pratt, 821 F. App'x 200, 202 (4th Cir. 2020).

Because Petitioner's claims will be dismissed for failure to exhaust, respondent's other arguments do not need to be considered.

## VI. Conclusion

For the foregoing reasons, respondent's motions to dismiss and summary judgment [Dkt. Nos. 13, 14] must be granted. An appropriate Order and judgment shall issue.

Entered this 13 day of October 2021.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge